# In the United States Court of Federal Claims

Nos. 20-44; 20-47; 20-55 (consolidated)
(Filed: 6 August 2024)

```
*****************************************
ROBERT L. CAMPO, et al.,                *
                                        *
                                        *
                   Plaintiffs,          *
v.                                      *
                                        *
THE UNITED STATES,                      *
                                        *
                   Defendant.           *
                                        *
*****************************************
```

*Camilo K. Salas III*, Salas & Co., L.C., with whom was *Ashley M. Liuzza*, Stag Liuzza, L.L.C., all of New Orleans, LA, for plaintiffs.

*William J. Shapiro*, Senior Trial Attorney, of Sacramento, CA, with whom was *Matt Rand*, Environment and Natural Resources Division, Department of Justice, all of Washington, DC, for the government.

## OPINION AND ORDER

**HOLTE, Judge.**

Before the Court is plaintiffs' Motion for Reconsideration of the Court's 9 February 2024 Opinion and Order granting the government's second Motion to Dismiss. *See Campo v. United States*, 169 Fed. Cl. 502 (2024). Plaintiffs allege the Court's dismissal order erred in its application of Louisiana's oyster statutes to plaintiffs' case. For the foregoing reasons, and for the reasons explained in detail in the Court's 9 February Order, the Court denies plaintiffs' Motion for Reconsideration.

### I.  Factual and Procedural History Relevant to Plaintiffs' Motion for Reconsideration[1]

In 2019, the Army Corps of Engineers opened the Bonnet Carré Spillway for a total of 123 days. Compl. at 3, 32–33, ECF No. 1. This lowered "the natural and essential salinity levels of the waters and marshes where plaintiffs' . . . oyster leases are located," leading to widespread

---

[1] On 23 December 2021, the Court issued an opinion denying the government's first Motion to Dismiss in Part. *See Campo v. United States*, 157 Fed. Cl. 584 (2021) [hereinafter 23 December Order]. On 9 February 2024, the Court issued an opinion granting the government's second Motion to Dismiss. *See Campo v. United States*, 169 Fed. Cl. 502 (2024). A complete recitation of the factual and procedural histories in this case can be found in those orders. *See id.* at 505–09; 23 December Order at 587–93.

oyster mortality.  *Id.* at 29, 32–33.  Plaintiffs subsequently filed suit in this court alleging "[a]s a direct . . . consequence of the opening of the Bonnet Carré Spillway . . ., plaintiffs and the putative Class members have been deprived of the use, occupancy, and enjoyment of their" oyster stock, reefs, and beds, "resulting in a permanent taking . . . for a public use, without payment of just compensation."  *Id.* at 33.

On 23 December 2021, the Court denied the government's first Motion to Dismiss this case.  *See Campo v. United States*, 157 Fed. Cl. 584 (2021).  On 24 October 2022, the government filed a second motion to dismiss plaintiffs' Complaint pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC") or, in the alternative, for summary judgment pursuant to RCFC 56, arguing Louisiana Revised Statutes section 56:423 precludes plaintiffs from suing "the United States for claims allegedly arising out of the spillway's 2019 operation."  *See* Gov't's Mot. to Dismiss or Mot. for Summ. J. ("Gov't's MTD/MSJ") at 21, ECF No. 43; *see also id.* at Ex. 16.  Plaintiffs responded to the government's Motion by stating section 56:423 does not apply to the Bonnet Carré Spillway and, even if it did, it could not prevent plaintiffs from vindicating their constitutional rights under the Fifth Amendment Takings Clause.  Pls.' Resp./Opp'n to the United States' Mot. for Summ. J. at 9–13, ECF No. 47.  On 1 February 2023, the government filed a reply averring section 56:423 applies to the Bonnet Carré Spillway and defines plaintiffs' property rights as "subordinate to the United States' right to take any action in furtherance of integrated coastal protection."  Gov't's Reply in Supp. of Mot. for Summ. J. at 4, ECF No. 52.  Following supplemental briefing on the history and constitutionality of Louisiana's oyster regulatory scheme, *see* Suppl. Br. Order, ECF No. 59, the Court held oral argument on the government's Motion to Dismiss and Alternative Motion for Summary Judgment on 27 September 2023 in New Orleans, Louisiana.  *See* Order, ECF No. 58.

On 9 February 2024, the Court issued a 30-page order granting the government's Motion to Dismiss and finding the government's Alternative Motion for Summary Judgment moot.  *Campo v. United States*, 169 Fed. Cl. 502 (2024) [hereinafter Dismissal Order]; *see* Reported Op. and Order, ECF No. 65.  In doing so, the Court found the Bonnet Carré Spillway "is a flood control project within the meaning of 'integrated coastal protection'" as used in Louisiana Revised Statute section 49:214.2(11).  *Campo*, 169 Fed. Cl. at 520.  As a result, the Court held "[s]ections 56:423(A)(1) and (B)(1)(A) [of the Louisiana Revised Statutes], which are . . . unambiguous . . . apply to plaintiffs and the 2019 operation of the Bonnet Carré Spillway and bar plaintiffs from maintaining the instant lawsuit."  *Id.*  In evaluating plaintiffs' lease contracts with the state of Louisiana, the Court further held "by virtue of the lease restrictions . . . plaintiffs never had the right to sue for harm caused by integrated coastal protection."  *Id.* at 523.  In short, the Court determined "[p]laintiffs . . . cannot bring this case" because Louisiana's complex oyster regime explicitly prevents them from doing so by not granting "plaintiffs . . . the right to sue" in their highly "restrictive lease contracts."  *Id.* at 520, 530.

On 8 March 2024, following the Court's entry of judgment in this case, *see* ECF No. 66, plaintiffs filed a motion for reconsideration pursuant to RCFC 59(a)(1) arguing "the Court committed factual or legal error by applying its ruling to leases that [p]laintiffs obtained prior to the 2016 amendments to Louisiana Revised Statute 56:423."  Pls.' MFR, ECF No. 67 at 2.  According to plaintiffs, "the Court's [Dismissal Order] should apply only to any original lease that was obtained for the first time *after* July 1, 2016, which is the date the amendments to

Louisiana Revised Statute 56:423 became effective." *Id.* (emphasis added).  In response, the government contends "[p]laintiffs' Motion points to no intervening change in the controlling law or newly discovered evidence, and [p]laintiffs fail to identify any clear factual or legal error or need to prevent manifest injustice."  Gov't's Resp. at 2, ECF No. 69.  Thus, according to the government, "the Court should deny [p]laintiffs' Motion."  *Id.* at 3.  The Court subsequently held telephonic oral argument on plaintiffs' Motion on 30 May 2024.  Order, ECF No. 71.

## II.     Party Arguments

Plaintiffs argue they are entitled to reconsideration as "the Court's ruling [dismissing this case] should apply only to any original lease that was obtained for the first time after July 1, 2016, which is the date the amendments to Louisiana Revised Statute 56:423 became effective."  Pls.' MFR at 2.  According to plaintiffs, "[i]t was not until the year 2016 . . . that the [Louisiana] Legislature Amended [sections] 56:423(A) and (B)" to address integrated coastal protection.  *Id.* at 6.  Specifically, at oral argument, plaintiffs for the first time contended:  "integrated coastal protection [as defined in 2016] included the words 'flood control' . . . [but f]lood control [wa]s not included in the definition in [] 2006 . . . of coastal protection.  So . . . . [that] kills the [government's] entire argument because, specifically, the Court held [in February 2024], . . . that the [s]pillway was a flood control project within the meaning of integrated coastal protection."  30 May 2024 Oral Arg. Transcript ("Tr.") at 50:12–23, ECF No. 73; *see also* Tr. at 51:3–4.  Thus, plaintiffs argue "[t]he restrictions set forth in the 2016 version of [section] 56:423 . . . that restrict [p]laintiffs' ability to file claims against the government for injuries arising from . . . integrated coastal protection," such as the operation of the spillway, "did not restrict [p]laintiffs' right to file suit against the government" "relative to . . . leases they obtained prior to July 1, 2016."  Pl.'s MFR at 9, 10; *see* Tr. at 17:10–15 ("[THE COURT:]  Plaintiffs agree, for the purposes of reconsideration at this time, that any leases that were signed after the 2016 amendments to the statute were properly dismissed by the 9 February order, correct? [PLAINTIFFS:]  . . . Any—any new leases, yes, Your Honor.").

In response, the government argues, "[o]n February 9, 2024, the Court issued a thirty-page opinion" holding "[p]laintiffs cannot maintain their Fifth Amendment claims because Louisiana law subordinated [p]laintiffs' rights to the United States' right to take any actions in furtherance of integrated coastal protection, including actions taken for the purpose of flood control such as the 2019 operation of the Bonnet Carré Spillway."  Gov't's Resp. at 1 (noting "[t]o reach this holding, the Court reviewed the plain language of multiple Louisiana statutes, . . . analyzed the structure of those statutes, the[ir] . . . legislative histories, the statutes' contemporaneous construction by Louisiana's Coastal Protection and Restoration Authority, and the statutes' constitutionality," and considered "seven briefs" from the parties, as well as four hours of oral argument).  Turning to plaintiffs' arguments, the government states "[p]laintiffs point to no new evidence or [intervening] change in . . . law to support" their Motion.  *Id.* at 5.  The government characterizes plaintiffs' contentions related to the 2016 amendments to section 56:423 as a retroactivity argument and contends, "[f]irst, [p]laintiffs cannot raise this retroactivity issue for the first time in a motion for reconsideration. . . . [And s]econd, [p]laintiffs' argument fails on [the] merits" because "[i]n 2006, the Louisiana Legislature subordinated the rights of oyster lessees to the right of the United States to divert freshwater through mechanisms like the Bonnet Carré Spillway," meaning "[t]he rationale of the [Court's]

2024 Opinion therefore applies to all of [p]laintiffs' oyster leases (all of which post-date the 2006 amendment[s])." *Id.* at 6; *see* Tr. at 46:7–18 ("[THE GOVERNMENT:] [T]he Court, in its Footnote 5, got it exactly right. It said there is no . . . legislative history from 2009 or 2016 that suggests that the Louisiana Legislature, by modifying a few words, intended some wholesale change to what it had already decided in 2006, which was to limit the lessee's ability to sue the United States for actions exactly like this."). In the alternative, the government argues "even if the 2016" amendments were "the first . . . to subordinate [p]laintiffs' rights, there is no retroactivity issue here because [p]laintiffs' claims did not accrue until 2019." *Id.*

In their Reply, plaintiffs argue the 2006 oyster statutes are irrelevant as "[t]he Court did not" hold under the older version of the statute in its Dismissal Order. Pls.' MFR Reply at 3, ECF No. 70. Plaintiffs therefore state "the government does not have the right" to argue the Court should apply the 2006-era statutes to plaintiffs "because [the government] did not move timely for reconsideration" of the Court's order, which was based on the statute as amended in 2016. *Id.* at 10. Plaintiffs then reiterate, "the information provided in each of [the plaintiff's complaints] . . . include[s] the year when each lease was obtained[, and w]ith that information . . . . it cannot be said that the restrictions in . . . [section] 56:423 were enacted before all the [p]laintiffs acquired their property interests." *Id.* at 9. Thus, plaintiffs again contend the Court's Dismissal Order should apply only to "those class members who first obtained their leases [after] July 1, 2016." *Id.* Finally, addressing the government's retroactivity arguments, plaintiffs clarify the "issue is not retroactivity," but rather that "'a . . . restriction [that] was enacted after the plaintiff's property interest was acquired . . . cannot be said to "inhere" in the plaintiff's title.'" *Id.* at 11 (quoting *A&D Auto Sales Inc. v. United States*, 748 F.3d 1142, 1152 (Fed. Cir. 2014)).

### III. Applicable Law

RCFC 59(a)(1) provides:

The court may, on motion, grant . . . a motion for reconsideration on all or some of the issues . . . as follows:

(A) for any reason for which a new trial has heretofore been granted in an action at law in federal court;
(B) for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court; or
(C) upon the showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the court.

RCFC 59(a)(1). According to the Federal Circuit, pursuant to RCFC 59, this "court, in its discretion, 'may grant a motion for reconsideration when there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice.'" *Biery v. United States*, 818 F.3d 704, 711 (Fed. Cir. 2016) (quoting *Young v. United States*, 94 Fed. Cl. 671, 674 (Fed. Cl. 2010)). "A motion for reconsideration must also be supported 'by a showing of extraordinary circumstances which justify relief.'" *Id.* (quoting *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004)). Given this high bar,

"[t]he decision whether to grant reconsideration lies largely within the discretion of the [trial] court." *Yuba Nat. Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990) (explaining in a parenthetical the denial of a rule 59 motion for reconsideration will not be reversed on appeal "absent an abuse of discretion").

## IV.   Whether Plaintiffs are Entitled to Reconsideration Pursuant to RFC 59(a)(1)

In their Motion, plaintiffs allege they are entitled to reconsideration because the Court "committed factual or legal error." Pls.' MFR at 2; *see* Tr. at 5:25–6:4 ("THE COURT: And just to confirm, your motion only mentioned the Court committing factual or legal error. You're not arguing that there's been any change in controlling law or newly discovered evidence, correct? [PLAINTIFFS:] No, Your Honor."). In short, plaintiffs argue the Court improperly applied a 2016 statute to plaintiffs' leases obtained before the statute went into effect. *See* Pls.' MFR at 10 ("Any lawful regulation defining the scope of the property interest that *predates* the creation of that interest will 'inhere in the title to the property.'") (emphasis in original).

In its Dismissal Order, the Court reviewed Louisiana's oyster regulatory scheme and concluded "the Bonnet Carré Spillway is a flood control project within the meaning of 'integrated coastal protection,'" meaning "[s]ection[] 56:423 . . . appl[ies] to plaintiffs and the 2019 operation of the . . . [s]pillway and bar[s] plaintiffs from maintaining the instant lawsuit." *Campo v. United States*, 169 Fed. Cl. 502, 520 (2024). The Court further held, because "plaintiffs[] lack[ed] . . . rights in the oysters before signing [their] leases" and because the limitation on coastal protection-related lawsuits "predated, and was incorporated into, plaintiffs' lease contracts," plaintiffs "never had the right to sue the government for injuries 'arising from . . . integrated coastal protection.'" *Id.* at 520, 523–24 (quoting La. Rev. Stat. § 56:423 (2016)). In reviewing the relevant statutes, the Court noted the definition of "coastal protection" that eventually became "the definition of [integrated coastal protection] at issue" "originally appeared in section 56:423 of the 2006 Louisiana Revised Statutes." *Id.* at 513 n.5. The Court recognized "[t]he 2009 and 2016 amendments," which replaced 'coastal protection' with 'integrated coastal protection,' were "merely intended for clarity as the absence of discussion regarding these amendments among the Louisiana [Legislature] . . . suggests they were inconsequential." *Id.* (cleaned up); *see also* Gov't's MFR Resp. at 11 (explaining "oyster lessees' rights have been subordinate to the right[s] of the United States . . . since 2006"). In other words, the Court explained the statute as enacted in 2006 was—as relevant to the Court's analysis—substantively the same as the 2016 version discussed at length in the Court's Dismissal Order. *Id.*

In reconsideration briefing and at oral argument, plaintiffs clarified all sixty-one, *see* Tr. at 8:24–25, oyster leases at issue here were signed after the 2006 amendments to section 56:423 went into effect. Tr. at 21:13–16 ("[THE COURT:] . . . [A]ll of the leases at issue were either signed or they were renewed after the 2006 amendments to 56:423. Is that correct? [PLAINTIFFS:] Yes, sir."); *see also* Pls.' MFR Reply at 4–8 (enumerating plaintiffs' oyster lease contract numbers). In doing so, plaintiffs confirmed oyster lease renewals do not contain the word "renewal" and are new contracts different from previous iterations of leases for the same area. *See* Tr. at 22:17–25 ("[THE COURT:] [I]t sounds like the renewal was a full new lease document. [PLAINTIFFS:] Yeah, you're correct. Judge."); *see also* Tr. at 24:13–15

("[THE GOVERNMENT:] [The renewals are] brand new lease[s]. As far as I can tell, [they] do not use the term 'renewal' or its equivalent . . . ."); Tr. at 27:23–28:9 ("[THE COURT:] [I]s there any specific relevant case law or statutory provision that supports the notion that a renewal . . . signed after the amendments went into effect should not be included under new statutory provision[s]? [PLAINTIFFS:] No."). As the Court recognized in its Dismissal Order, the 2006 amendments to Louisiana's oyster statutes imposed comparable limitations on plaintiffs' rights in the oysters as did the 2016 amendments. *See Campo*, 169 Fed. Cl. at 513 n.5. Indeed, section 56:423(B)(1)(a) as amended in 2016 states oyster lessees do not "have any right to maintain any action against . . . the United States . . . for any claim arising from any project, plan, act, or activity in relation to integrated coastal protection." La. Rev. Stat. § 56:423 (2016); *see Campo*, 169 Fed. Cl. at 511. In 2006, before *all* leases at issue were obtained, the same provision read: no oyster lessee "shall have any right to maintain any action against . . . the United States . . . for any claim arising from any project, plan, act, or activity, in relation to coastal protection, conservation, or restoration." *See* Gov't's MTD/MSJ at 5–6 (quoting La. House Bill No. 1249 (2006)). The text of these provisions is virtually identical, with the only difference being the use of "coastal protection, conservation, or restoration" in 2006 and "integrated coastal protection" in 2016. As the substitution of the term "integrated coastal protection" in the 2009 and 2016 versions of this statute for the term "coastal protection, conservation, or restoration" as used in 2006 was "inconsequential" and "intended [only] for clarity," *see Campo*, 169 Fed. Cl. at 513 n.5, however, even going as far back as 2006, plaintiffs "never had the right to sue the government" for the injuries alleged in this case. *Id.* at 542–24. Indeed, to the extent plaintiffs argued at oral argument the Court's 9 February 2024 holding relied on the specific term "flood control" in the 2016 definition of "integrated coastal protection," which is absent from the 2006 definition of "coastal protection, conservation, or restoration," *see* Tr. at 50:12–23, the 2006 definition was exceedingly broad. In 2006, "coastal protection, conservation, or restoration" included:

> [A]ny project, plan, act, or activity for the protection, conservation, restoration, enhancement, creation, preservation, nourishment, maintenance, or management of the coast, coastal resources, coastal wetlands, and barrier shorelines or islands.

*See* Gov't's MTD/MSJ at 5 (citing La. House Bill No. 1249 (2006)). In effect, this definition encompassed *any act* undertaken for the benefit of coastal Louisiana. *Id.* The 2016 definition of "integrated coastal protection" discussed at length in the Court's 9 February 2024 decision likewise covers *all* "plans, projects, policies, and programs intended to provide hurricane protection or coastal conservation or restoration . . . includ[ing] but not [] limited to . . . flood control." La. Rev. Stat. § 49:214.2(11) (2016) (emphasis added). Thus, the definitions at issue—that of "coastal protection, conservation, or restoration" from 2006 and of "integrated coastal protection" from 2016—have similarly broad scopes. There is no indication the former's lack of a "non-exhaustive list" including the term 'flood control,' *see Campo*, 169 Fed. Cl. at 513, renders it narrower than the latter or exclusive of flood control projects in the Louisiana coastal area. *See id.* at 515 n.7 (explaining the Bonnet Carré Spillway is within the "coastal area" as defined by Louisiana law); Tr. at 46:7–18. Accordingly, no lease at issue in this case provides plaintiffs the right to "maintain any action against . . . the United States . . . for any claim arising from any project, plan, act, or activity in relation to" the 2019 operation of the Bonnet Carré Spillway (i.e., (integrated) coastal protection). La. Rev. Stat. § 56:423 (2016);

Gov't's MTD/MSJ at 6 (quoting La. House Bill No. 1249 (2006)).  Plaintiffs' argument the Court's Dismissal Order should only apply to those leases first signed after July 1, 2016 is therefore unavailing.  The Court, in its discretion, *see Biery v. United States*, 818 F.3d 704, 711 (Fed. Cir. 2016) (explaining this court "may grant" motions for reconsideration "in its discretion"); *Yuba Nat. Res., Inc. v. United States*, 904 F.2d 1577, 1582 (Fed. Cir. 1990), denies plaintiffs' Motion for Reconsideration.  Tr. at 28:15–25 ("[THE COURT:]  [T]o the extent that there are restrictions imposed by Section 56:423, that are discussed in the 9 February opinion, if they applied as early as 2006, do [p]laintiffs agree that this Court dan deny the motion for reconsideration?  [PLAINTIFFS:]  If the leases came into effect afterwards . . . then yes.").

## V.     Conclusion

For the foregoing reasons, the Court **DENIES** plaintiffs' Motion for Reconsideration, ECF No. 67.

**IT IS SO ORDERED.**

s/ Ryan T. Holte  
RYAN T. HOLTE  
Judge